New Jersey Department of Labor,
Workmen's Compensation Bureau.

HARRY HIGHAM, PETITIONER, v. PREAKNESS HILLS
COUNTRY CLUB, A CORPORATION, RESPONDENT.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *Harley, Cox & Walberg.*

The above matter coming on for hearing, and having been submitted to me for decision, I hereby find and determine as follows:

\*          \*          \*          \*          \*          \*          \*

2. That the petitioner was employed by the respondent as a golf professional on or about the 1st day of August, 1930, and that he continued in such employment up to the 3d day of August, 1930, that his duties consisted in working, giving lessons to members belonging to the Preakness Hills Country Club, said lessons including playing lessons, that the petitioner was so engaged at the time he was injured.

3. That the petitioner at the time of the injury received for his services wages amounting to $100 per month.

4. That on the 3d day of August, 1930, the petitioner sustained personal injuries under the following circumstances: On August 3d, 1930, the climatological records from the department of agriculture of the United States government show that the thermometer registered ninety-five degrees Fahrenheit, that during the entire day, the day was extremely hot; that the petitioner began working for the said respondent at eight o'clock on that morning by giving golf lessons to some of the members of the club and that he continued, principally during the course of the day, to be exposed to the

sun rays, and that he was obliged to do so in the course of his employment; that on or about four o'clock of the said day, he was requested by Charles Bloom, chairman of the greens committee, and supervisor of the said petitioner to whom he owed the duty of reporting for service, to accompany said Charles Bloom to give him a playing lesson while the said Charles Bloom was engaged in playing with another; that after he had played for a short time, he immediately began to feel dizzy but continued, nevertheless, to play until he reached the tenth hole of the course, when the petitioner, in swinging his golf club, suddenly collapsed on the fairway and was taken to the clubhouse and given immediate attention by several doctors who were in the clubhouse at the time. The petitioner was in a state of complete collapse and in a semi-conscious condition. Stimulants were administered to him immediately to revive him. The first aid treatment that was administered, extended over a period of several hours, and the petitioner was then removed to the Barnert Memorial Hospital where he was confined for four days during which time he was attended by Doctors Roemer and Wishnack. He was then ordered by his physicians to seek rest, and go to a cool place and since he had a sister living at Sea Bright, New Jersey, it was suggested that he be attended by her. While at Sea Bright he was attended by Doctor Monahan, who visited him and treated him. Upon his return to Paterson, he was again subjected to further treatment by Doctor David Mendelsohn, who administered electricity and other forms of treatment necessary for his condition. He was treated by Doctor Mendelsohn until sometime in October, 1930, when Doctor Mendelsohn discharged him because he was unable to do anything further for him. During the time that he was at the hospital and while he was at his sister's home, in Sea Bright, he was attended in both places by three nurses.

The medical testimony produced on behalf of the petitioner convinces me that the petitioner suffered from a sun stroke and that this sun stroke was due to the character of his employment which required him to be necessarily exposed to the sun rays and heat of the day beyond the normal and

average player, and by reason of his exceptional employment in being so exposed, his claim is within the purview of the Workmen's Compensation act. This bureau has so ruled * * * and the principle has been adopted by the Court of Errors and Appeals in our state in the case of *Kauffeld* v. *G. F. Pfund and Sons,* 97 *N. J. L.* 335; 116 *Atl. Rep.* 487.

The injuries testified to by petitioner's physicians is that as the result of the said sun stroke, the petitioner suffered a partial paralysis of the left arm and a hemorrhage of the cervical spine, which causes a partial limitation of his neck, which has incapacitated the petitioner to the extent that he cannot use a golf club to the same degree of efficiency as he did before the accident, and that he has been advised that exposure to the sun may prove dangerous to him in the future, that in their opinion, the extent of permanent disability sustained is twenty per cent. total disability.

The respondent, on the other hand, produced Doctors Charles B. Russell and T. A. Clay, who testified as follows: Doctor Clay testified that there are instances of where sun stroke leaves no after effects and his testimony was along general lines of medical knowledge on this subject, but he did not examine the petitioner, and therefore knew nothing of his condition. The testimony of Charles B. Russell indicates, however, that he examined the petitioner on September 15th, 1930, in the office of Doctor Wishnack and that his examination discloses that there were no after effects. Doctor Russell admitted, however, that cases of sun stroke generally warrant that care should be taken by the petitioner and admitted that he knew the petitioner was still being treated by Doctor Mendelsohn. Under the circumstances, I feel that after weighing the medical testimony of both sides and the testimony of the petitioner, that the petitioner has sustained ten per cent. total disability. The petitioner was paid during the course of his temporary disability by the respondent and I cannnot award any payment for compensation for temporary disability.

\* \* \* \* \* \* \*

JOHN J. STAHL,
*Deputy Commissioner.*